IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| LONGITUDE LICENSING LIMITED and 138 EAST LCD ADVANCEMENTS LIMITED,<br><br>　　　*Plaintiffs*,<br><br>v.<br><br>BOE TECHNOLOGY GROUP CO., LTD.,<br><br>　　　*Defendant*. | § § § § § § § § § § § §  CASE NO. 2:23-CV-00515-JRG-RSP |

# MEMORANDUM ORDER

Before the Court is Defendant's Motion to Exclude Portions of Dr. E. Fred Schubert's Testimony Regarding Infringement. **Dkt. No. 187**. The Motion is ripe. *See* Dkt. Nos. 201, 218. Additionally, the Parties submitted supplemental briefing, *see* Dkt. Nos. 299, 300, in response to the Court's order, *see* Dkt. No. 266. Dr. Schubert is Plaintiffs' technical expert, and opines on, *inter alia*, validity, infringement, use, and benefits of the '079, '948, '093, '157, '606, and '462 Patents. *See Op. Rep.*, Dkt. No. 187-2; *First Supp. Rep.*, Dkt. No. 187-4; *Second Supp. Rep.*, Dkt. No. 299-1; *Validity Rep.*, Dkt. No. 187-3. In the Motion and supplemental briefing, Defendant seeks to exclude (1) portions of Dr. Schubert's Opening Report as inconsistent with this Court's Claim Construction Order, *see Claim Constr. Order*, Dkt. No. 129;  (2) portions of his First and Second Supplemental Reports under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993); and (3) portions of his Validity Report under Federal Rule of Civil Procedure 37 for untimely addition of an infringement theory. *See* Dkt. No. 187; Dkt. No. 299. For the reasons set forth below, the Court denies the Motion.

1

## I. LEGAL STANDARD

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires trial courts to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied regarding a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert*, 509 U.S. at 592–93 (1993). Such courts are given broad discretion in making Rule 702 admissibility determinations. *Kumho Tire*, 526 U.S. at 152 ("[A] judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert's testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *See United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury to consider. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391–92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to

evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249–50 (5th Cir. 2002) ("'The trial court's role as gatekeeper [under *Daubert*] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits" (quoting an Advisory Committee Note to Fed. R. Evid. 702)). As the Supreme Court explained, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

Despite the above, however, "[e]ven if testimony is reliable, it may still be excluded if it relies on information that violates the [Federal] [R]ules [of Civil Procedure]." *Estech Sys. IP, LLC v. Carvana LLC*, 2023 WL 3292881, at *2 (E.D. Tex. May 5, 2023).

## II. DISCUSSION

As explained above, Defendant raises several grounds for exclusion of Dr. Schubert's reports. The Court addresses each in turn.

A. <u>Exclusion Under Rule 37 of Dr. Schubert's Validity Report Opinions About Infringement of the '948 Patent Under the Doctrine of Equivalents ("DOE")</u>

According to Defendant, Dr. Schubert's analysis in his validity report as to a hypothetical claim should be excluded under Rule 37(c)(1) as untimely under Federal Rule of Civil Procedure 26(a)(2). Dkt. No. 187 at 10 (citing *Validity Rep.*, Appx. XI ¶¶ 62–71). However, Plaintiffs respond that they "do not intend to offer Dr. Schubert's hypothetical claim analysis opinions at trial because BOE waived any ensnarement defense" by not raising or articulating it to the '948 Patent DOE theory, Dkt. No. 201 at 15, and, in reply, Defendant "agrees that this issue is rendered moot," Dkt. No. 218 at 5. The Court thus **DENIES** as **MOOT** the Motion on this ground.

3

B. <u>Exclusion of Dr. Schubert's Opening Report Opinions That Are Allegedly Inconsistent with the Court's Claim Construction Order</u>

Defendant next argues that Dr. Schubert's Opening Report opinions concerning the "rubbing direction" of the '948 and "a channel area that extends in a direction" of the '079 Patent should be excluded because they are inconsistent with the Court's Claim Construction Order. Dkt. No. 187 at 9. Beginning with the first term, the Court defined the term "rubbing direction" as meaning "a direction created by the rubbing process." *Claim Constr. Order* at 16. Some additional context is useful in resolving this dispute. The Parties previously explained, as recited in the Claim Construction Order, that "the rubbing process is a well-known mechanical process in liquid crystal technology similar to brushing that leaves grooves in the rubbed material that cause the liquid crystal molecules to align along the grooves and, thus, sets the rubbing direction." *Id.* at 15. During claim construction, Plaintiffs argued that "rubbing direction" took on some default alignment direction, independent of any specific process used to set the alignment direction (i.e., independent of a rubbing process). *Id.* at 12. The Court expressly rejected this argument, finding that "rubbing direction" was not divorced from the "rubbing process," but instead was a direction caused by it. *Id.* at 15–16. This construction was essentially the one for which Defendant advocated. *Id.* at 13.

According to Defendant, Dr. Schubert's opinion on "'the direction along which the color shifts towards blue' in polarization tests performed on the accused product," is inconsistent with the Court's definition. *Id.* at 10 (first citing *Op. Rep.*, Appx. XII ¶¶ 58–62, 124–28, 185–89, 256–60; and then citing *Claim Constr. Order* at 12–16). Plaintiffs respond that the Court's definition requires both a "direction" and a "rubbing process." Dkt. No. 201 at 13. They then contend that Dr. Schubert explained in his Opening Report that BOE uses a rubbing process to set the rubbing direction for each of the Accused Products. *Id.* at 13–14 (citing *Op. Rep.*, Appx. XII ¶¶ 52–53, 120–23, 183–84, 190–95, 251–55). According to Plaintiffs, Dr. Schubert only used the polarization

4

tests, which Defendant took out of context, to measure and confirm the direction caused by the rubbing process (i.e., the "rubbing direction"). Having reviewed the cited portions of Dr. Schubert's report, the Court agrees that Dr. Schubert's opinions using the "rubbing direction" with respect to the '948 Patent are consistent the Court's Claim Construction Order. Accordingly, the Court finds that the Motion on this ground should be and hereby is **DENIED**.

With respect to the second term, "a channel area that extends in a direction" from the '079 Patent, the Court defined that term as meaning "a channel length that runs between source and drain electrodes." *Claim Constr. Order* at 12. The Court found that the term "'channel length' provide[d] more clarity than 'channel area' because the [P]arties both referred to it as such and the specification also identifies the channel area as being a channel length . . . as well as having a defined direction." *Id.* at 11. The Court also noted that "[t]he direction of the channel length is along the axis running between the source and drain electrode of the TFT, which is also generally the direction of current flow." *Id.*

Defendant takes issue with Dr. Schubert's use of "the supposed direction of current flow rather than the channel length that runs between the source and drain electrodes to determine the extension of the channel area." Dkt. No. 187 at 10 (first citing *Op. Rep.*, Appx. XI ¶¶ 10–11; and then citing *Claim Constr. Order* at 10–11). Plaintiffs respond that Dr. Schubert explained that "the [channel] length runs between the source and drain electrodes [because that] is the direction of current flow in the [A]ccused [P]roduct, concluding '[t]he axis along which the channel length "runs"' is the vertical axis." Dkt. No. 201 at 14 (citing *Op. Rep.*, Appx. XI ¶ 10–11). Similarly, here, having reviewed the cited portions of Dr. Schubert's Opening Report, the Court does not find his analysis of the "a channel area that extends in a direction" term from the '079 Patent to be

5

inconsistent with the Court's construction of it. Therefore, the Court finds that the Motion on this ground should be and hereby is **DENIED**.

C. Exclusion Under *Daubert* of Dr. Schubert's First and Second Supplemental Report Opinions About Reasonable Similarity of Additional BOE Products

In the Motion, Defendant argues that Dr. Schubert's reasonable similarity opinions from his First Supplemental Report "fall short of providing . . . scientific analysis backed by adequate facts" for four reasons. Dkt. No. 187 at 5. Defendant repeats the same four arguments in its supplement in response to Dr. Schubert's Second Supplemental Report, so the Court only recites them once although the Court analyzes the arguments with respect to the portions of each report cited in each set of briefs. Dkt. No. 299 at 1 (citing *Second Supp. Rep.* ¶¶ 23–28, 31–35, 39–45, 47–50, 52–55, 57–60, 62–65).

Defendant first argues that Dr Schubert "fails to address certain claim limitations [or] show that the original and additional BOE products share common characteristics . . . to these . . . limitations." *Id.* (citing *First Supp. Rep.* ¶¶ 20, 27–33, 58–62). Specifically, Defendant points to the following limitations from the following Asserted Patents: (1) the "a thin-film transistor having a channel area that extends in a direction," "the data line having . . . a non-broad portion that does not overlap the thin film transistor," "the scanning line having . . . a narrow width portion in another portion," and "fixed-potential capacitor electrode" from the '079 Patent; (2) "rubbing direction" from the '948 Patent; and (3) whether the seal region "forming a rectangular shape," the elements of "first side," "second side," "third side," and "fourth side," whether the "pixel region is positions . . . without protruding from the second substrate in the plan-view of the first substrate," and whether the seal member is formed "without the use of a plug," from the '606 Patent. *Id.* (citing *Souri Supp. Rep.*, Dkt. No. 187-5 ¶¶ 21, 25–26, 44, 46–47).

6

The second reason, according to Defendant, is that Dr. Schubert "simply asserts that the plan-view geometries of the original and additional products are consistent." *Id.* at 5–6 (citing *First Supp. Rep.* ¶¶ 19–20, 27–33, 41, 51–52, 65–66, 61). Defendant continues that such analysis is "conclusory" and "unreliable" because Dr. Souri's analysis confirms that "in some cases, [the geometries] are markedly different [for] the additional BOE products and/or do not meet the recited claim limitations." *Id.* at 6 (citing *Souri Supp. Rep.* ¶¶ 26–28, 33, 37).

Defendant's third argument is that, unlike in his Opening Report, Dr. Schubert "fails to consider any cross-sectional views for the additional BOE products" in his First Supplemental Report. *Id.* at 7. And, Defendant continues, "in the absence of [that analysis], the plan-view GDS layout files that [he] . . . relies on for the additional BOE products are insufficient to demonstrate . . . that they share similar cross-sectional features as the" original ones he analyzed. *Id.* at 8.

Defendant last argues that Dr. Schubert's opinions in the First Supplemental Report "have the potential to create" juror confusion because he "fails to identify . . . which additional BOE products each original [one] is representative of," so "if the jury finds that some of the original [] products infringe but others do not, they will be left confused as to which additional BOE products also infringe." *Id.* at 8–9. Essentially, Defendant argues that because Dr. Schubert independently analyzed each product for infringement purposes of each Asserted Patent in his Opening Report, and then, in his Supplemental Report analyzed the additional products with respect to the original products he found infringed each Asserted Patent, if the jury were to find infringement of some subset of the products that infringed an Asserted Patent, they would be confused on whether the additional products also infringed with Dr. Schubert's non-individualized reasonable similarity analysis. *Id.*

7

Plaintiffs respond to each of Defendant's four arguments fulsomely, both in their original response, and in their supplemental response. *See* Dkt. No. 201 at 2–13; Dkt. No. 300 at 1–3. For each of the three patents to which Defendant points as evidence of its first argument, that Dr. Schubert did not analyze the infringement of claims, limitation-by-limitation, Plaintiffs quote and cite to specific language from the report allegedly showing that the claim limitations Defendant took issue with were analyzed by Dr. Schubert and addressed. *Id.* at 6–7 (citing *First Supp. Rep.* ¶¶ 20–24, 36–38, 61).

As to Defendant's second argument, that Dr. Schubert's analysis of only the plan-view geometries was cursory, Plaintiffs respond that Dr. Schubert "provided a complete explanation . . . regarding similarities among GDS layouts and explained that no material differences exist . . . for the purposes of . . . infringement." Id. at 7–8 (citing *First Supp. Rep.* ¶¶ 19–22, 27–33, 41–47, 51–55, 59–61, 65–69). Again, for each example that Defendant argues constitutes a marked difference that Dr. Schubert did not explain (related to the '948, '093, and '157 Patents), Plaintiffs quote and cite to Dr. Schubert's alleged explanation of why they are not material to his infringement analysis. *Id.* (citing *First Supp. Rep.* ¶¶ 38, 41–47, 51–56; and then citing *Op. Rep.* ¶¶ 40–41).

To Defendant's third argument, about Dr. Schubert's alleged failure to consider cross-sectional views in his First Supplemental Report, Plaintiffs respond that Defendant "produced no cross-sectional view evidence when it produced [the] supplemental GDS files [and] cannot now hide behind documents and testimony it did not provide." *Id.* at 11. Tellingly, Defendant acknowledges this argument but does not dispute it in its reply. See Dkt. No. 218 at 4. However, Plaintiffs also argue that no limitation requires cross-sectional information beyond what is provided by the GDS files, as evidenced by Dr. Souri's own analysis that also did not analyze cross-sectional views, and Dr. Schubert "explained in his supplemental report how he could infer

8

infringement" without that information. Dkt. No. 201 at 9–11 (first citing *Souri Supp. Rep.*; and then citing *First Supp. Rep.* ¶¶ 20, 27, 41, 44, 61).

To Defendant's final argument—that jurors will be confused by Dr. Schubert's original groupings and later reasonable similarity analysis—Plaintiffs first argue that "[e]ach of the products analyzed in Dr. Schubert's [O]pening [R]eport is representative of each of the reasonably similar products identified in his [First] [S]upplemental [R]eport." *Id.* at 12. They also argue that identifying a group of representative products and comparing another allegedly infringing product to that group is not improper. *Id.* at 3, 12.

Having reviewed both Dr. Schubert's Opening Report, and his First and Second Supplemental Reports, the Court agrees with Plaintiffs. As to Defendant's first argument, as it admits throughout (e.g., "Dr Schubert opines that [the] additional BOE . . . products infringe . . . because these products have reasonably similar design . . . to the original . . . products that he analyzed in his [O]pening [R]eport."), Dr. Schubert's Supplemental Reports do not exist in a vacuum—they exist with reference to his Opening Report. This fact is important because Defendant references Dr. Souri's analysis with respect to this argument, which, in many instances, complains that Dr. Shubert's analysis in his First Supplemental Report does not "explain" the "elements of" claim limitations. *See, e.g.*, *Souri Supp. Rep.* ¶ 44 ("Dr. Schubert does not explain . . . the elements of 'first side,' . . . ."). Dr. Schubert does explain these elements in his Opening Report, which he references. *See, e.g.*, *First Supp. Rep.*, § V. Relevant Legal Principles and Claim Construction ¶ 12 ("In paragraphs 34[–]53 of my Opening [] Report[,] I describe certain legal principles I was provided and that I applied in rendering my infringement opinions.").

Most importantly, however, as Plaintiffs argue, Dr. Schubert did address each claim limitation in his infringement analysis of the additional products. For example, with respect to the

9

limitations that Defendant complained were missing from his analysis of the additional products infringement of the '079 Patent, he opines that he "confirmed that the data line, scanning line, thin film transistor (TFT) and capacitive lines geometries were consistent with those of the MV270QUM-N20 LCD Module [he] analyzed in [his] Opening [] Report. . . . [He] confirmed that the data line and the channel area of the TFT extended in the same direction." *See First Supp. Rep.* ¶ 20. He goes on to explain that he confirmed each claim limitation, and how he confirmed it. *Id.* Defendant' second argument is similarly unpersuasive. That Defendant's own expert found inconsistent the plan geometries that Dr. Schubert found were consistent, is not a reason to exclude, but rather an issue ripe for cross-examination. *See Freeny v. Murphy Oil Corp.*, No. 2:13-CV-791, 2015 WL 11089599, at *3 (E.D. Tex. June 4, 2015). Similarly, Defendant's third and fourth arguments are also arguments to be resolved by rigorous cross-examination, rather than exclusion. *See Mathis*, 302 F.3d at 461. Thus, the Motion is **DENIED** on these grounds.

### III.   CONCLUSION

Accordingly, for the reasons set forth above, the Motion is **DENIED**.

**SIGNED this 4th day of December, 2025.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE