## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| LONGITUDE LICENSING LIMITED *and* 138 EAST LCD ADVANCEMENTS LIMITED, | § § § § | |
| *Plaintiffs*, | § § | |
| v. | § | CASE NO. 2:23-CV-00515-JRG-RSP |
| BOE TECHNOLOGY GROUP CO., LTD., | § § § | |
| *Defendant*. | § § | |

## <u>MEMORANDUM ORDER</u>

Before the Court is Defendant's Motion to Exclude Certain Opinions of Stephen Dell Concerning Damages. **Dkt. No. 193**. The motion is ripe, *see* Dkt. Nos. 202, 217, and Plaintiffs submitted a notice of supplemental authority, *see* Dkt. No. 313. Defendant seeks to exclude estimation of the number of BOE products that third parties import into the United States and evidence of third-party licensing programs, which are allegedly inputs into Mr. Dell's indirect infringement damages and reasonably royalty analyses, because his analyses of those items are allegedly unreliable under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). *See* Dkt. No. 193 at 1. For the reasons set forth below, the Motion is **DENIED**.

## I.     LEGAL STANDARD

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires trial courts to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied regarding a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert*, 509 U.S. at 592–93 (1993). Such courts are given broad discretion in making Rule 702 admissibility determinations. *Kumho Tire*, 526 U.S. at 152 ("[A] judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert's testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *See United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury to consider. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391–92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249–50 (5th Cir. 2002) ("'The trial court's role as gatekeeper [under *Daubert*] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits" (quoting an Advisory Committee Note to Fed. R. Evid. 702)). As the Supreme Court explained, "[v]igorous cross-examination, presentation of contrary evidence, and careful

instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

Despite the above, however, "[e]ven if testimony is reliable, it may still be excluded if it relies on information that violates the [Federal] [R]ules [of Civil Procedure]." *Estech Sys. IP, LLC v. Carvana LLC*, 2023 WL 3292881, at *2 (E.D. Tex. May 5, 2023).

## II.    DISCUSSION

BOE argues that the Court should exclude certain portions of Mr. Dell's opinions, which may be divided into two groups, first related to his estimation of indirect infringement damages using public data from third parties, and second, related to his reliance on third party general licensing terms. Dkt. No. 193 at 8–15. The Court addresses each in turn.

### A.  Mr. Dell's Estimation of Indirect Infringement Damages

Plaintiffs asked Mr. Dell to "calculate the portion of BOE's sales that have likely been sold or imported into the United States." Dkt. No. 193-2 ¶ 83. Making this inquiry difficult, BOE represented that it "does not maintain records tracking its downstream customers' importation in the United States," and does not itself import products incorporating the Accused Instrumentalities. *Id.* Dell therefore "relied on available information to determine the *portion* of the Accused Instrumentalities that are manufactured and sold outside of the United States that are subsequently incorporated into finished consumer products, which are then imported into the United States for sale to end customers/users." *Id.*   ¶84 (emphasis added). Specifically, he identified twelve customers that have "at least 0.5% share of BOE's revenue produced to date in this case," and who "report their financial standing publicly," which collectively "account for approximately 64.6% of the revenue produced in this case by BOE to date." Dkt. No. 193-3 ¶ 26.

3

BOE agrees that Mr. Dell then used publicly available information from those companies "to determine what *percentage* of each of the twelve customer[s'] overall revenue came from the United States." Dkt. No. 193 at 2 (citing Dkt. No. 193-3 ¶ 27) (emphasis added). However, BOE takes issue with the fact that Mr. Dell's use of "these revenue numbers included revenue for all products of the customers, not just products with LCD panels." *Id.* at 2, 11. BOE argues that this data included "the sales of products and services that do not contain the accused LCD panels" and erroneously assumed "that sales revenue . . . reflected sales of products with the accused components and that each [customers'] product shipped into the United States contained an accused BOE LCD panel." *Id.* at 11 (internal quotation marks omitted) (cleaned up). BOE also takes issue with his use of only twelve customers' data, from BOE's 700-plus customers. Dkt. No. 193 at 3, 11. BOE argues that these items render Mr. Dell's methodology the product of "unreliable data and built on speculation." *Id.* at 8.

Having considered these arguments and reviewed the briefing and record in full, the Court finds that Mr. Dell's analysis, estimating what percentage of BOE's allegedly infringing products are imported into the United States, is sufficiently reliable.

Mr. Dell does not use the revenue numbers that include non-accused products as a base for apportionment. *See Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1320–21 (Fed. Cir. 2011) (clarifying *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1338–39 (Fed. Cir. 2009) and rejecting the argument that "the entire market value of the product can be used if the royalty rate is low enough"); *Roland Corp. v. inMusic Brands, Inc.*, No. 2023-1327, 2025 WL 926703, at *15 (Fed. Cir. Mar. 27, 2025) (explaining that the "damages calculation, based in part on non-infringing [revenue], 'cannot support the jury's damages award'"). Instead, he only uses such sales to estimate the percentage of BOE products that are imported into the United States.

Unlike in other cases where the Federal Circuit found methods to be unreliable (*see, e.g.,* *Cyntec Co. v. Chilisin Elecs. Corp.*, 84 F.4th 979, 987–90 (Fed. Cir. 2023)), BOE here admits that the "panels and modules are incorporated into laptops, mobile phones, desktop monitors, TV sets, and pads and tablets," (*see* Dkt. No. 193 at 1) of third-party products, among those products that were included in the revenues from which Mr. Dell estimated importation rates. Moreover, Mr. Dell opined that this number represents a "reasonable approximation of the units associated with BOE's Accused Instrumentalities that were manufactured and/or sold outside the United States and later imported into the United States by BOE's downstream customers in finished consumer products," *see* Dkt. No. 193-3 ¶ 30. Finally, Mr. Dell's use of publicly available information related to a subset of customers representing the lion's share of BOE's revenue, (*see* Dkt. No. 193-3 ¶ 26 ("64.6%")), and estimation of the importation rate was made necessary by BOE's inability to produce more granular data upon which Mr. Dell could base his calculations, *see* Dkt. No. 193 at 1–2.

BOE raises an additional argument in reply: "where more specific data estimating U.S. sales of the accused products or similar products is available, as it is in this case, and which was actually used by the parties in the normal course of their business dealings (including discussion relating to the patents-in-suit), the more specific information should be used." See Dkt. No. 217 at 3 (citing Dkt. No. 217-1 ¶ 133). BOE is referring to its own expert, Mr. Alan Ratliff, and his use of the annual estimate of BOE's U.S. import rate of 20.5% prepared by Plaintiffs and shared with BOE during a pre-suit licensing meeting in April 2023. *See* Dkt. No. 202-2 ¶¶ 85–86. Plaintiffs respond, and the Court agrees, that BOE and Mr. Ratliff's "criticism of Mr. Dell's import rate estimation is simply that Mr. Dell did not rely on the same evidence as Mr. Ratliff," *see* Dkt. No. 202 at 4, and specifically, that he relies on a tier of evidence lower in the hierarchy of reliability,

according to Mr. Ratliff, *see* Dkt. No. 202-4 at 80:25–82:7. However, this complaint chiefly goes to the weight of Mr. Dell's testimony, not its admissibility. *See, e.g.*, *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996) ("As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility . . . ."); *AIG Europe Ltd. v. Caterpillar Inc.*, No. 1:17-CV-319, 2019 WL 8806217, at *7 (E.D. Tex. Oct. 3, 2019) ("These complaints go to the weight, not the admissibility, of Stringer's opinion, as they are focused primarily on the sources utilized by Stringer in conducting his analysis.").

Accordingly, the Court finds that Defendant's Motion should be **DENIED** as to Mr. Dell's estimation of allegedly infringing products imported into the United States for the purpose of calculating damages from BOE's alleged indirect infringement.

B. Mr. Dell's Reliance on the General Philips Licensing Terms

In his reasonably royalty analysis, under *Georgia Pacific* Factor No. 12, "the portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous invention," *see Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (Fed. Cir. 1970), Mr. Dell uses the royalty rates from two licensing programs from Philips to check his analysis under Factor No. 4. *See* Dkt. No. 193-2 ¶¶ 325–39, 360–62 ("While I recognize that the rates in the Philips licensing program are offered rates . . . , the rates . . . are publicly disclosed by a 'willing' licensor in the relevant industry, as well as related to analogous technologies incorporated into products similar to, or the same as, the Accused Instrumentalities. . . . [T]he licensing program would support and provide confirmatory evidence of the . . . licensing practices . . . in the relevant display industry . . . and provides *confirmatory evidence* demonstrating the acceptability of Plaintiffs' actual licensing policy and practice discussed in *Georgia Pacific* Factor 4 above." (emphasis added)).

BOE takes issue with two additional items here, arguing that they render Mr. Dell's analysis "unreliable, based on insufficient facts and data, and irrelevant." *See* Dkt. No. 193 at 13 (citations omitted). Specifically, BOE argues that Mr. Dell's opinions based on the Philips program terms cannot be admissible under *Lucent Techs. v. Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir. 2009) because (1) the Philips program terms are "not actual licenses," and (2) Plaintiffs did not have its technical expert opine, either in his report or through consultation with Mr. Dell, on the comparability of the technology in the Philips program. *See* Dkt. No. 193 at 13–15.

The Court disagrees. In each of the cases cited by BOE where the expert's opinions were excluded based on use of a license, it was for some other reason than BOE argues here. *See, e.g.*, *Lucent Techs.*, 580 F.3d at 1325 (Factor No. 2 "examines whether the licenses relied on by the patentee in proving damages are sufficiently comparable to the hypothetical license at issue in suit. . . . Lucent's licensing expert . . . argued for damages *based solely on a running royalty rate*. . . . On appeal, however, Lucent defends the damages award, contending that substantial evidence supports the *lump sum award* . . . ."); *Syneron Medical Ltd. v. Invasix, Inc.*, No. 8:16-CV-143, 2018 WL 4696969, at *14–15 (C.D. Cal. Aug. 27, 2018) ("Mr. Weinstein admitted that he . . . did nothing 'to investigate the technological comparability. . . . Furthermore, three out of four . . . are settlement agreements . . . [and] any probative value they might have would be 'substantially outweighed by the danger of unfair prejudice, confusing the issues, or misleading the jury' . . . [and the other] agreement . . . includes the transfer of tangible assets and trademark rights . . .." (citations omitted)); *Ravo v. Covidien LP*, 55 F. Supp. 3d 766, 774–77 (E.D. Pa. 2014) ("One way to establish the reasonable royalty . . . is to rely on license rates paid for comparable patents [under] *Georgia Pacific* factor 2. . . . The asserting expert has the duty to demonstrate comparability [of a license] . . . [but] once the expert shows some 'discernable link between the comparable license

and the claimed technology,' distinctions and oversights are matters for cross-examination. . . . At no time in its original briefing or at oral argument did Ravo assert that Passaggio's testimony concerned *Georgia Pacific* factor 12 or 14, instead of factor 2, even in the alternative. . . . Comparability must be proven under factor 12, just as it must be proven under factor 2. Passagio's opinion, therefore, [which failed to opine on the comparability whatsoever] . . . would suffer from the same deficiency with respect to comparability . . . ." (citations omitted)).

In fact, in each of BOE's cited cases, apart from *Syneron*, the non-license or non-comparable license was used as an input into the reasonable royalty analysis. Only in *Syneron* was it used as a "check." *See* 2018 WL 4696969, at *14. However, in *Syneron*, the expert admitted he did "nothing . . . to investigate the technical comparability of the licenses." *See id.* Unlike the other cases cited here, Mr. Dell did not use the Philips program as an input, but merely as a check to his already calculated reasonable royalty. And distinguishing Mr. Dell's analysis from the expert's analysis in *Syneron*, Mr. Dell confirmed in deposition and in his own report that he investigated the technical comparability of the technology in the Philips program. And the compared terms that Mr. Dell uses are not from a license obtained through litigation or including irrelevant and un-apportionable terms, such as trademarks, as in *Syneron*, but a market offering by an industry leader, as Mr. Dell opines. Because Mr. Dell has shown some "discernable link" between the allegedly comparable Philips program and the claimed technology, distinctions and oversights are now matters for cross-examination. *See ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 870 (Fed. Cir. 2010). To the extent that BOE takes issue that the Philips program terms are not an actual license between the parties, BOE also admits that that "Factor 12 may be broader than Factor 2." *See* Dkt. No. 193 at 13; *see also Georgia-Pacific*, 318 F. Supp. at 1120 (omitting the term "license" from Factor No. 12 but including it in Factor No. 2).

Accordingly, the Court finds that Defendant's Motion to exclude paragraphs 325–39 and 360–62 of Mr. Dell's report, in which he uses the Philips licensing program's terms as a check for his reasonable royalty analysis, is denied.

### III.     CONCLUSION

For the reasons provided above, the Motion is **DENIED.**

**SIGNED this 6th day of January, 2026.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE